## Commonwealth v. Covington National Bank.

[Abstract Kentucky Law Reporter, Vol. 7—41, 48.]

**Taxation of National Banks.**

There is no valid subsisting enactment in this state requiring national banks, like state banks, to pay a tax of fifty cents on each share of its stock of one hundred dollars in denomination.

**Constitutionality of Taxing Act.**

The act requiring state banks to pay each year fifty cents on each share of one hundred dollars is not unconstitutional because it does not apply also to national banks.

**Estoppel from Raising Constitutional Question.**

> The state which has taxed national banks under the act of March 16, 1867, and received the tax and issued its quietus therefor can not be heard to allege that the act is unconstitutional.

### APPEAL FROM KENTON CIRCUIT COURT.

June 18, 1885.

OPINION BY JUDGE PRYOR:

This is a proceeding in behalf of the Commonwealth against J. D. Fry, as cashier of the First National Bank, located at Covington, for failing to comply with the requirements of the revenue laws of the state in the payment of taxes alleged to be due by that corporation.

It is claimed that there is the sum of $25,000 of taxes unpaid from the year 1867 to the year 1878; that for each year the bank failed to account for $2,500 of taxes that should have been paid or accounted for to the auditor. It is alleged that during this entire period the general revenue law of the state required such institutions to pay into the treasury on the first day of July in each year, fifty cents on each share of its stock of one hundred dollars.

That such a law was in existence applying to national banks during the period for which the recovery is sought, is controverted by the appellee (the bank) and this is the only issue presented by the record.

By an act approved February 9, 1865, it was made the duty of the officers and managers of such corporations within this state to report to the auditor upon both the amount of its capital stock and the number of shares into which the same may be divided, and each officer and manager was required to pay on the first Monday in July in each year into the treasury in aid of the sinking fund, a tax of fifty cents on each share thereof equal to one hundred dollars of the capital stock of the association. The act of 1865 remained in force until March 11, 1867, when the legislature passed an act entitled an "Act to tax the shares of capital in banks and associations established under a law of congress usually denominated national banks." The first section of that act provided: "That an annual tax of not at a greater rate than is levied on other money or capital in the hands of individual citizens of this state,

is assessed and levied upon the shares of capital stock held by any firm or body corporate in any bank or banking association established or doing business, or located within the commonwealth under the law of congress. Provided, that the tax hereby imposed shall not exceed the rate of tax upon the shares of capital stock of any of the banks organized under the authority of this state." The president, cashier, or other chief officer was required to report to the auditor by the first of March in each year a true and correct list of the names of each stockholder, the amount of stock held by them and the par value of each share of the capital stock.

"And the auditor shall, annually, by the 10th of March in each year, notify the president, cashier, or other chief officer, the amount of tax to be paid on the shares of the capital stock, and upon the payment of the amount to the state treasurer and the filing of the receipt with the auditor, he shall execute and return to the bank a quietus for the tax on the shares for that year."

By the third section of the act, "the president, cashier, or other chief officer failing to report to the auditor as required by the second section of the act, shall forfeit and pay to the commonwealth the sum of five hundred dollars, to be recovered by motion and with ten per cent. damages, the costs and attorney's fee of fifty dollars."

By the fourth section: "The failure of the bank or banking association to pay said tax on the shares of capital stock as provided by this act by the 22d of March in each year, the auditor shall notify the proper assessor of the state revenue of the nonpayment of the tax, etc., and said assessor shall include in the said tax list of each person, corporation, etc., on the 1st day of March in each year, and a tax of fifty cents upon each share of said stock shall be annually paid by the holder of said stock."

The act approved March 16, 1867, the substance of which has been given, remained in force until the 9th of April, 1878, when the legislature passed another act similar in its provisions to the act of 1865, imposing a tax of fifty cents on each share of stock of these national banks and requiring payment into the treasury of the tax on the 1st of July in each year. It is evident that the legislature by the act of 1867 repealed the act of 1865, and instead of taxing national banks fifty cents on each share of capital stock as the state banks were taxed, required these national banks to pay an annual tax of not at a greater rate than was imposed on other

moneyed capital in the pocket of the individual citizen, and to prevent a disregard of the law of congress on the subject provided that this tax should not exceed the tax imposed on the banks organized under the law. As a further agreement on the point showing the intent on the part of the legislature to make a distinction as to the mode of taxation between the national and state banks, this act of 1867 remained in force until the passage of the act of the 9th of April, 1878, when it was repealed, the legislature again imposing a tax of fifty cents on each share of capital stock, indicating clearly the meaning attached by the legislature to the act of 1867, and although the act of the 9th of April, 1878, by its third section, provides that it is not a contradiction of the act of 1867, it is certainly a repeal of that act in one of its provisions, and the legislature in regard to the subject-matter, sheds much light upon the legislative purpose. As conclusive of the legislature, will the fourth section of the act of 1867, providing that if the banks failed to pay said shares of capital stock as provided by that act, then the owners of the shares of stock shall be assessed and a tax of fifty cents on each share to be paid by the holder. If the legislature by the act of 1867 intended to tax each share of stock fifty cents as the stock in state banks was taxed, we perceive no reason for passing that act, because the act of 1865 already imposed a tax of fifty cents, and by the general law moneyed institutions organized under the state law paid a similar tax, fifty cents on each share of stock. The motive prompting the legislature to place the capital stock or the shares of stock in national banks on the same footing for the purpose of taxation, as money in the pocket of the individual citizen, is not necessary to be determined. We find the law on the statute book and in full from the year 1867 until the 9th of April, 1878, and under that law this appellee, during the entire period of twelve years, has complied strictly with its provisions and paid into the treasury every dollar of the tax the legislature has said the bank shall pay.

It is urged, however, that the special legislation by which the national banks paid a less tax during this period than that imposed upon the banks and moneyed institutions organized under the state law, makes it open to constitutional objection, therefore the appellee is liable for the tax, less the amount paid into the treasury. The general law provides that "on bank stock or on any monied corporation of loan or discount, fifty cents on each share thereof equal

to one hundred dollars, or on each one hundred dollars 'of stock therein owned by individuals, corporations or societies."

Under the general law, when the bank fails to pay the tax due into the treasury by the 1st of July in each year, the cashier and his sureties are made liable for the same, and twenty per cent. upon the amount, and the bank forfeits the privileges of its charter. Sec. 1, Art. 10, Chap., Revenue and Taxation. Under the provision of the general law the cashier in this case is sought to be made liable for the payment of the taxes and the twenty per cent. upon the amount.

· An answer was filed containing in substance the statement that the bank, through its chief officers during the twelve years, or for the period the appellee was its cashier, paid into the treasury of the state all the taxes due or imposed upon such banking associations by law, and this upon notice by the auditor of the amount due, that it obtained from the treasurer his receipt for each year for the taxes due, which was filed with the auditor, and the latter gave to the bank a quietus for each year showing a payment and compliance by the bank and its officers with the provisions of the act of March, 1867.

This fact seems to be conceded by the state, but the auditor collecting this tax·or giving the quietus for so long a period has through its agent asserted this claim for the additional tax for the reason as is attempted to be maintained, the general law applicable to all other banks or moneyed institutions within the state pay as tax, fifty cents on the one hundred dollars or each share instead of the ordinary ad valorem tax. This is a novel question presented by the representative of the state, and if the views presented by counsel are to prevail, it places the appellee who was the cashier in a condition, where from his own pocket he may be compelled to satisfy a demand that has originated solely from his obedience to the legislative will.

In disposing of the constitutional question made that the facts conceded in this case show neither the existence of class legislation nor such a disregard of the general law relative to the taxation of the banks and moneyed institutions operating under a grant of power from the state, as would authorize this court to say that the act under which this tax was paid was in violation of the constitution. This bank was established under the national banking law of the United States, and the power of the state to tax limited by the

provisions of the congressional enactment that brought such banks into existence.

They have rights, duties and privileges that do not belong to any bank chartered by state legislation. When these banks were sought to be organized within the state the legislature saw proper to impose on them by the act of 1865, the same burden in the way of taxation that was imposed on other banks, but by the act of 1867 changed the mode of taxing national banks, leaving the general law untouched when applied to state banks. This is all the legislature has done towards producing any irregularity in the taxation. There is none and never has been any as between these national banks and the motive for making the distinction complained of is not the subject of judicial inquiry.

Aside from the constitutional question made, it is evident that the auditor acting under the law of 1867 and exacting a compliance with its provisions on the part of the bank can not at this late day, or after the payment of the tax and the issuing of his quietus, raise the constitutional question. The legislature had the undoubted right to repeal the law or the taxgatherer might have disregarded an unconstitutional enactment if in the way of collecting the revenue of the state, but when a tax is imposed by law and the citizen discharges his obligation to the state by paying all that is required of him, to its properly constituted officers, it is then too late to raise the constitutional question so as to enforce the provisions and penalties for violating some other law, the provisions of which the legislature has said to the citizen you are not required to obey. By the act of 1867, the cashier of the bank, for failing to comply with its provisions, subjected himself to a penalty of five hundred dollars, and now, for complying with that law, it is attempted to make him responsible for the entire tax of the bank and twenty per cent. thereon for a failure to do that which, by the law of 1867, he was prohibited from doing.

It is gravely urged that the cashier must take notice of the unconstitutional enactment, and when acting under it he does so at his peril, while the auditor, compelling him to comply with its provisions, may disregard his action and enforce a penalty upon him for this obedience to his demands. The fact that the person now acting as auditor was not the auditor when the demand was made and the quietus given can make no difference. There is but the one auditor, and we see no reason and authority for his making,

through his agent, an ex post facto inquiry as to the constitutional-ity of the act under which these taxes were paid.

It is argued that, if unconstitutional, it is no law and neither the state nor the taxpayer can take shelter under it. This, however, is the question at issue, and when the taxes have been paid and the quietus issued, we are aware of no authority conferred on the auditor to raise such a question. But upon what principle can the state obtain the bank's money in discharge of its taxes, giving to its chief officer a quietus and then enforce a penalty of a personal nature against the cashier and his sureties for a large sum of money because the act under which the auditor acted, and the cashier paid the taxes was unconstitutional. This is not a proceeding against the bank, but a proceeding against the cashier as an individual, the bank not a party to the action. Why should not the state be estopped as well as an individual upon such a state of facts? This, it seems to us, is a question not easily answered, and in our view of this case, neither the taxes claimed nor the penalty can be recovered by the cashier, and the special enactment in regard to national banks was not repealed by the adopting the general statutes.

Judgment below *affirmed.*

*H. P. Whitaker, for appellant.*

*J. F. & C. H. Fisk, Benton & Benton, for appellees.*